| | |
|---|---|
| 1 | JOHN L. BURRIS, Esq./ State Bar #69888 |
| 2 | BENJAMIN NISENBAUM, Esq./ State Bar #222173 |
| | LAW OFFICES OF JOHN L. BURRIS |
| 3 | Airport Corporate Centre |
| | 7677 Oakport Street, Suite 1120 |
| 4 | Oakland, California 94621 |
| | Telephone:  (510) 839-5200 |
| 5 | Facsimile:   (510) 839-3882 |
| 6 | Attorneys for Plaintiff |

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| 9 | GREGORY SAULSBURY, SR., individually, and as joint personal representative of the Estate of decedent, GREGORY SAULSBURY, Jr.; ALICE PULLIAM, individually, and as joint personal representative of the Estate of decedent GREGORY SAULSBURY, Jr.; G.S. III, a minor, by and through his Guardian ad Litem, TWONDA J.; S.G., a minor, by and through her Guardian Ad Litem, SHENITA KING; SHENITA KING, individually; and CLARICE PATTERSON, | Case No.  C-05-01471 EMC  **COMPLAINT FOR DAMAGES FOR VIOLATION OF CIVIL RIGHTS. JURY TRIAL DEMANDED** |
| | Plaintiffs, | |
| | vs. | |
| | CITY OF PACIFICA,  a municipal corporation; PAT BRENNAN, in his official capacity as Chief of Police for the CITY OF PACIFICA; VINCE ROMERO, individually and in his official capacity as a police officer for the CITY OF PACIFICA; MAX REISING, individually and in his official capacity as a police officer for the CITY OF PACIFICA;  BART BUCHANAN, individually and in his official capacity as a police officer for the CITY OF PACIFICA; LANCE BELL, individually and in his official capacity as a police officer for the CITY OF PACIFICA; FERNANDO REALYVASQUEZ, individually and in his official capacity as a police officer for the CITY OF PACIFICA; NICK BARSETTI, individually and in his official capacity as a police officer for the CITY OF PACIFICA;  DOMINIC ALBANESE, (caption continues on following page) | |

COMPLAINT FOR DAMAGES                                                                                                          1

individually and in his official capacity as a police officer for the CITY OF PACIFICA; DOES 1-25, inclusive, individually and in their capacities as police officers for the CITY OF PACIFICA,

Defendants.

/

## JURISDICTION

1. This action arises under Title 42 of the United States Code, Section 1983. Jurisdiction is conferred upon this Court by Title 28 of the United States Code, Sections 1331 and 1343. The unlawful acts and practices alleged herein occurred in the County of San Mateo, California, which is within this judicial district.

## PARTIES

2. Plaintiff GREGORY SAULSBURY, SR. ("SAULSBURY") is a competent adult, a resident of the County of San Mateo, California, and is the father and joint personal representative of the estate of decedent.

3. Plaintiff ALICE PULLIAM ("PULLIAM") is a competent adult, a resident of the County of San Mateo, California, and is the mother of and joint personal representative of the estate of decedent GREGORY SAULSBURY, JR.("decedent").

4. Plaintiff G.S., III, is a minor represented herein by and through his Guardian Ad Litem, TWONDA J., and is the son of the decedent herein.

5. Plaintiff S.G., is a minor represented herein by and through her Guardian Ad Litem, SHENITA KING, and is the niece of decedent herein.

6. Plaintiff CLARICE PATTERSON is a competent adult, a resident of San Mateo County, and is the grandmother of decedent herein.

7. Plaintiff SHENITA KING is a competent adult, a resident of San Mateo County, and is the aunt of decedent and the Guardian Ad Litem of Minor Plaintiff S.G. herein.

8. Defendant City of PACIFICA ("CITY") is a municipal corporation, duly organized and existing under the laws of the State of California. The City operates under its authority the Pacifica Police Department.

9. At all times mentioned herein, Defendant PAT BRENNAN ("BRENNAN") was employed by defendant CITY as Chief of Police for the CITY. He is being sued in his official capacity as Chief of Police for the CITY.

10. At all times mentioned herein, Defendant VINCE ROMERO ("ROMERO") was employed by defendant CITY as a police officer for the CITY. He is being sued individually and in his official capacity as a police officer for the CITY.

11. At all times mentioned herein, Defendant MAX REISING ("REISING") was employed by defendant CITY as a police officer for the CITY. He is being sued individually and in his official capacity as a police officer for the CITY.

12. At all times mentioned herein, Defendant BART BUCHANAN ("BUCHANAN") was employed by defendant CITY as a police officer for the CITY. He is being sued individually and in his official capacity as a police officer for the CITY.

13. At all times mentioned herein, Defendant LANCE BELL ("BELL") was employed by defendant CITY as a police officer for the CITY. He is being sued individually and in his official capacity as a police officer for the CITY.

14. At all times mentioned herein, Defendant FERNANDO REALYVASQUEZ ("REALYVASQUEZ") was employed by defendant CITY as a police officer for the CITY. He is being sued individually and in his official capacity as a police officer for the CITY.

15. At all times mentioned herein, Defendant NICK BARSETTI ("BARSETTI") was employed by defendant CITY as a police officer for the CITY. He is being sued individually and in his official capacity as a police officer for the CITY.

16. At all times mentioned herein, Defendant DOMINIC ALBANESE ("ALBANESE") was employed by defendant CITY as a police officer for the CITY. He is being sued individually and in his official capacity as a police officer for the CITY.

17. At all times mentioned herein, defendant officers DOES 1-25, inclusive, were employed by defendant CITY as a police officers. They are being sued individually and in their capacities as police officers for the CITY.

18. Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 25, inclusive, and therefore sues these defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state the names and capacities of DOES 1 through 25, inclusive, when they have been ascertained.

19. In engaging in the conduct described herein, Defendant police officers acted under the color of law and in the course and scope of their employment with the City. In engaging in the conduct described herein, Defendant police officers exceeded the authority vested in them as police officers under the United States and California Constitutions and as police officers employed by Defendant CITY.

20. Plaintiffs will amend their Complaint to include State causes of action related to their Federal claims within the relevant statutory tort claims filing time constraints.

## STATEMENT OF FACTS

21. On the night of January 2, 2005, Greg Saulsbury, Jr., an otherwise healthy, 30 year-old, African-American man, watched television with his father, Plaintiff SAULSBURY, SR., in the small television room of their residence at 460 Inverness Drive, when he began to complain of difficulty breathing. Plaintiff SAULSBURY, SR., noticed that his son was also sweating profusely. Decedent began acting in a bizarre and paranoid manner, and made statements consistent with suffering hallucinations, such as "a Mexican girl is killing me!" The behavior and physical symptoms were so unusual that decedent's father, Plaintiff SAULSBURY, SR., asked that someone in the house call for emergency medical help.

22. Plaintiff KING then placed a 911 call from 460 Inverness Drive in Pacifica, California for emergency medical help needed. Plaintiff KING told the dispatch operator that her nephew, Mr. Saulsbury, Jr., a 30 year-old man, was breathing hard, sweating profusely, and that he was intermittently physically lashing out with his arms and legs. The call made no mention of any

criminal activity taking place, and specifically requested emergency medical help. Shortly thereafter, a number of Pacifica police officers arrived at the Inverness Drive residence, including defendant officers. No medical personnel arrived with the officers.

23. Plaintiff PATTERSON answered the knock on her front door and asked who was there. One defendant officer responded, "Police", and asked whether she had called. Plaintiff PATTERSON, bewildered at the police response to the medical emergency, told the officers that the call was for the paramedics not for the police. Mr. Saulsbury, the decedent, sat on a reclining chair in the living room, where he had sat since his father first noticed his physical distress. Plaintiff SAULSBURY, SR. remained in the television room with his son. Mr. Saulsbury continued to sweat profusely and his labored breathing continued. However, Mr. Saulsbury's earlier bizarre behavior had dissipated by the time the officers arrived. Plaintiff SAULSBURY, SR. and his son were visible to the defendant officers located at the front door of the residence. When Mr. Saulsbury noticed the officers at the front door, he stood up, but made no aggressive move or statement.

24. Totally ignoring Plaintiff PATTERSON, the decedent's grandmother, the defendant officers stormed into the residence. They shoved Plaintiff PATTERSON to the side, thereby causing her to fall against a plant. Defendant officers asked no questions of anyone in the residence. They made no investigation of the medical emergency or of Mr. Saulsbury's condition. In fact, after the initial comment to Plaintiff PATTERSON, defendant officers did not speak to anyone as they immediately focused on Mr. Saulsbury and ran into the small television room.

25. Defendant officers grabbed Mr. Saulsbury, who was already on his feet, and, inexplicably, handcuffed him with his hands behind his back, before slamming him face down on the floor. Mr. Saulsbury was in obvious medical distress, but was nevertheless treated by defendant officers as if he were a violent criminal.

26. Many of Mr. Saulsbury's family-members, including all of the named plaintiffs except Plaintiff PULLIAM, who is decedent's mother, were present and witnessed all or portions of defendant officers' egregious misconduct against Mr. Saulsbury. Plaintiffs estimate that approximately seven officers, including the named defendant officers, responded to the call for medical help and subsequently entered the home.

27. After Mr. Saulsbury was handcuffed on the floor, defendant officers brutally attacked him. Defendant officers pepper-sprayed the already stricken, helpless and shackled Mr. Saulsbury as he lay on the floor. Some defendant officers placed their weight against Mr. Saulsbury, including at least one defendant officer who pressed his knee against Mr. Saulsbury's back. Mr. Saulsbury reacted only defensively against the defendant officers' assault and battery against him, and at no time were the officers in any danger of harm from Mr. Saulsbury or anyone else in the residence.

28. Plaintiffs verbally objected to the defendant officers' outrageous actions against Mr. Saulsbury. One defendant officer placed Plaintiff KING in a chokehold and pulled her backward away from the officers who were attacking her nephew.

29. At some point during the attack on Mr. Saulsbury, one or more defendant officers withdrew their Taser stun-gun(s). In spite of being informed of Mr. Saulsbury's clear medical crisis, defendant officers repeatedly triggered their Taser stun-gun(s) so that Mr. Saulsbury was shocked numerous times.

30. Plaintiff SAULSBURY, SR., who was in the television room with his son and defendant officers, verbally objected to the tasing of his son. Mr. Saulsbuury was jammed on the floor against a wall between two pieces of furniture as some defendant officers tased him. In apparent response to Plaintiff SAULSBURY, SR.'s verbal objections, one defendant officer tased Plaintiff SAULSBURY, SR. in the neck, causing immediate shock and pain. Plaintiff SAULSBURY, SR. did not interfere or prevent defendant officers from performing their duties in any way.

31. Plaintiffs allege that defendant officers killed Mr. Saulsbury through the unconscionable and repeated "Tazing" of Mr. Saulsbury, combined with improper physical restraint of Mr. Saulsbury. Mr. Saulsbury's dying words, which will be his last words heard by his family, were: "Grandma, they shooting me! Don't let them kill me!"

32. Finally, after Mr. Saulsbury's body went limp, an officer spoke. It was no apology or question, however. The officer cursed, and said "Ah f(expletive)! He isn't breathing." Defendant officers then flipped Mr. Saulsbury's limp body over and began to press against his chest. As the officer began CPR, one defendant officer forced Plaintiffs out of the residence. When Plaintiffs asked why they had to leave the house, a defendant officer told them, "This is not your house, it's ours," as

if the officers had control over the house. It rained throughout the night, and Plaintiffs were held outside of their residence in the rain for a lengthy period of time.

33. The paramedics arrived at about 1:15 a.m. and removed Mr. Saulsbury from the residence on a stretcher with an oxygen mask over his face. Defendant officers assured Plaintiffs, who were forced to remain outside of their residence, that Mr. Saulsbury was breathing at the time he was removed.

34. Plaintiffs have requested the police report regarding this incident, but Defendant CITY has refused to produce the report. Defendant CITY has also refused to produce the dispatch (CAD) records pertaining to this incident. Plaintiffs have learned that the coroner's office pronounced the time of Mr. Saulsbury's death at 12:40 a.m., substantially prior to the paramedics arrival.

35. Plaintiffs allege that Mr. Saulsbury's death was the result of excessive and brutal force used against him by defendant officers. Plaintiffs allege that defendant officers made no investigation of the circumstances pertaining to Mr. Saulsbury's condition, when his medical condition was the very basis of the 911 call made by his aunt. Plaintiffs allege that a police response consisting of seven police officers and no medical personnel whatsoever is a fundamentally outrageous response to a call for medical emergency help.

36. Plaintiffs further allege that Mr. Saulsbury's death was the proximate result of Defendant CITY's failure to reasonably train their police officers in the proper and reasonable use of force, the proper and reasonable use of taser stun-guns, and the proper and reasonable response to a call for medical emergency help. Plaintiffs further allege that these substantial failures reflect Defendant CITY's policies implicitly ratifying and/or authorizing the use of excessive force by its police officers, the failure to reasonably train police officers employed by Defendant CITY in the use of Taser stun-guns, and the failure to reasonably train its police officers in the proper and reasonable response to calls regarding medical emergencies.

37. The killing of decedent Gregory Saulsbury, Jr. described herein was brutal, malicious, and done without just provocation or cause, proximately causing Plaintiffs' injuries and resulting damages.

DAMAGES

38. Plaintiffs were physically, mentally, emotionally and financially injured and damaged as a proximate result of Mr. Saulsbury, Jr.'s wrongful death, including, but not limited to, the loss of decedent's familial relationships, comfort, protection, companionship, love, affection, solace, and moral support. In addition to these damages, Plaintiffs are entitled to recover for the reasonable value of funeral and burial expenses.

39. As a further direct and proximate result of the negligence, excessive force and deliberate indifference of defendants, and each of them, Plaintiffs have been deprived of Mr. Saulsbury, Jr's financial support.

40. Plaintiff SAULSBURY, SR. suffered assault and battery, and severe emotional distress from being tased without reasonable justification.

41. Plaintiff PATTERSON suffered assault and battery, and severe emotional distress from being shoved aside by defendant officers.

42. Plaintiff KING suffered assault and battery, and severe emotional distress from being unreasonably choked by defendant officers.

43. All plaintiffs, except Plaintiff PULLIAM, suffered severe emotional distress from being forced to wait outside in the rain after defendant officers killed Mr. Saulsbury, Jr.

44. The conduct of the defendant officers was malicious, wanton, and oppressive. Plaintiffs, as decedent's successors in interest, are therefore entitled to an award of punitive damages against said individual defendants.

45. Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights, and the rights of decedent, under the law. Plaintiffs are therefore entitled to recover all attorneys' fees incurred in relation to this action pursuant to Title 42 United States Code section 1988.

FIRST CAUSE OF ACTION
(Wrongful Death 42 U.S.C. Section 1983)

46. Plaintiffs hereby re-allege and incorporate by reference herein paragraphs 1 through 45 of this Complaint.

47. Defendants acted under color of law in repeatedly "tasing" decedent without lawful justification, subjecting decedent to excessive force, and failing to secure or permit reasonable and prompt medical treatment for decedent's injuries, thereby depriving Plaintiffs and the decedent of certain constitutionally protected rights, including, but not limited to:

   a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

   b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution;

   c. The right to be free from the use of excessive force by police officers, which is guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution;

   d. The right to equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution; and/or,

   e. The right to be free from interference within the zone of privacy, as protected by the Fourth and Ninth Amendments to the United States Constitution;

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION
(Violations of Plaintiffs' civil rights to familial relationship - 42 U.S.C. section 1983)

48. Plaintiffs hereby re-allege and incorporate by reference herein paragraphs 1 through 47 of this Complaint.

49. Defendants, acting under color of state law, and without due process of law deprived Plaintiffs of their right to a familial relationship by seizing decedent by use of unreasonable, unjustified and deadly force and violence, causing injuries which resulted in decedent's death, all

without provocation and did attempt to conceal their excessive use of force and hide the true cause of decedent's demise to deprive Plaintiffs of their right to seek redress, all in violation of rights, privileges, and immunities secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION
(42 U.S.C. Section 1983)

50. Plaintiffs hereby re-allege and incorporate by reference herein paragraphs 1 through 49 of this Complaint.

51. Defendants acted under color of law in "tasing" Plaintiff SAULSBURY, SR., without lawful justification, and subjecting Plaintiff SAULSBURY, SR. and Plaintiff PATTERSON to excessive force, thereby depriving Plaintiffs of certain constitutionally protected rights, including, but not limited to:

    f.    The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

    g.    The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution;

    h.    The right to be free from the use of excessive force by police officers, which is guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution;

    i.    The right to equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution; and/or,

    j.    The right to be free from interference within the zone of privacy, as protected by the Fourth and Ninth Amendments to the United States Constitution;

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

FOURTH CAUSE OF ACTION
(*Monell* - 42 U.S.C. section 1983)

52. Plaintiffs hereby re-allege and incorporate by reference herein paragraphs 1 through 51 of this Complaint.

53. Plaintiffs are informed and believe and thereon allege that high ranking City of Pacifica officials, including high ranking police supervisors such as Defendant BRENNAN, DOES 11 through 25, and/or each of them, knew and/or reasonably should have known about repeated acts of misconduct by defendant Officers ROMERO, REISING, BUCHANAN, BELL, REALYVASQUEZ, BARSETTI, ALBANESE and DOES 1-10, and/or each of them.

54. Plaintiffs further allege on information and belief that such high ranking City of Pacifica officials, including high ranking police supervisors such as Defendant BRENNAN, DOES 11 through 25, and/or each of them, knew and/or reasonably should have known, that defendant officers ROMERO, REISING, BUCHANAN, BELL, REALYVASQUEZ, BARSETTI, ALBANESE and DOES 1-10, and/or each of them, were untrained or not reasonably trained in the use of Taser stun-guns.

55. Plaintiffs further allege on information and belief that such high ranking City of Pacifica officials, including high ranking police supervisors such as Defendant BRENNAN, DOES 11 through 25, and/or each of them, knew and/or reasonably should have known, that defendant officers ROMERO, REISING, BUCHANAN, BELL, REALYVASQUEZ, BARSETTI, ALBANESE and DOES 1-10, and/or each of them, were untrained or not reasonably trained in responding to medical emergencies.

56. Despite having such notice, Plaintiffs are informed and believe and thereon allege that Defendants BRENNAN, DOES 11-25, and/or each of them, approved, ratified, condoned, encouraged and/or tacitly authorized the continuing pattern and practice of misconduct and/or civil rights violations by said officers, the use of Taser stun-guns by officers who are untrained or not reasonably trained in the use of Taser stun-guns, and allowing officers to respond who are untrained or not adequately trained in responding to medical emergencies.

57. Plaintiffs are further informed and believe and thereon allege that as a result of the deliberate indifference, reckless and/or conscious disregard of the misconduct by, and the lack of training or unreasonable training in responding to medical emergencies and using Taser stun-guns of Defendants ROMERO, REISING, BUCHANAN, BELL, REALYVASQUEZ, BARSETTI, ALBANESE and DOES 1-10, and/or each of them, Defendant BRENNAN, DOES 11-25, and/or each of them, encouraged these officers to continue their course of misconduct and caused these officers' lack of training, resulting in the violation of the Plaintiffs' rights as alleged herein.

58. The aforementioned acts and/or omissions and/or deliberate indifference by high ranking City of Pacifica officials, including high ranking City of Pacifica Police Department supervisors, Defendants BRENNAN, DOES 11-25, and each of them resulted in the deprivation of Plaintiffs' constitutional rights including, but not limited to, the following:

   a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

   b. The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution;

  c. The right to be free from the use of excessive force by police officers, which is guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution;

  d. The right to equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution;  and/or,

  e. The right to be free from interference within the zone of privacy, as protected by the Fourth and Ninth Amendments to the United States Constitution;

58. Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

### FIFTH CAUSE OF ACTION
(Survival action:  Violation of decedent's civil rights
42 U.S.C. section 1983)
(Plaintiffs PULLIAM  and SAULSBURY, SR. as joint personal representatives of decedent)

59. Plaintiffs hereby reallege and incorporate by reference herein paragraphs 1 through 58 of this Complaint.

60. The foregoing claim for relief arose in decedent's favor, and decedent would have been the Plaintiff with respect to this claim if he had lived.

61. Defendants acted under color of law in "tasing" decedent without lawful justification, subjecting decedent to excessive force and failing to secure or permit  reasonable and prompt medical treatment for decedent's injuries, thereby depriving Plaintiffs and the decedent of certain constitutionally protected rights, including, but not limited to:

  a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution;

b.  The right not to be deprived of life or liberty without due process of law, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution;

c.  The right to be free from the use of excessive force by police officers, which is guaranteed by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution;

d.  The right to equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution; and/or,

e.  The right to be free from interference within the zone of privacy, as protected by the Fourth and Ninth Amendments to the United States Constitution.

62. Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

SIXTH CAUSE OF ACTION
(Deliberate Indifference to Decedent's Medical Needs)

63. Plaintiffs reallege and incorporate by reference herein paragraphs 1 through 62 of this Complaint.

64. In doing the acts complained of, defendants, and each of them, acted under color of state law to deprive the decedent of urgently needed medical care in violation of his rights, under the Due Process clause of the Fourteenth Amendment.

65. As a proximate result of defendants' conduct, Plaintiffs suffered injuries and damages as set forth.

WHEREFORE, Plaintiffs prays for relief as hereinafter set forth.

JURY DEMAND

66. Plaintiffs hereby demand a jury trial in this action.

PRAYER

WHEREFORE, Plaintiffs pray for relief, as follows:

1. For general damages in a sum of $30,000,000.00;
2. For special damages in a sum according to proof;
3. For punitive damages in a sum according to proof;
4. For reasonable attorney's fees pursuant to 42 U.S.C. Section 1988;
5. For cost of suit herein incurred;
6. For injunctive relief;
7. For such other and further relief as the Court deems just and proper.

Dated:  April 11, 2005                              **The Law Offices of John L. Burris**

                                                    _____/S/_____
                                                    John L. Burris
                                                    Attorney for Plaintiffs